DEAN (BORLAND v.). See Case No. 1,660.

DEAN (DONOVAN v.). See Case No. 3,992.

## Case No. 3,705.

### DEAN v. EQUITABLE FIRE INS. CO.

[4 Cliff. 575; 8 Ins. Law J. 773.] [1]

Circuit Court, D. Massachusetts. May Term, 1878.

REFORMATION OF INSURANCE POLICY—FRAUD AND MISTAKE—TRUSTEE IN BANKRUPTCY.

1. Courts of equity have power to correct mistakes in policies of insurance, even to the extent of changing the material clauses of the instrument which are the subjects of special agreement.

2. Such instruments may be reformed where it appears that, in consequence of fraud or mistake, they do not express or violate the intention of the parties.

3. The party alleging the mistake must show exactly in what the error consists.

4. A person was adjudged a bankrupt, May 8, 1876. In March previous he conveyed certain real estate to certain grantees. The complainant was appointed trustee of the bankrupt estate, June 3 of the same year. Soon after his appointment an agent of the respondents told him that he held certain policies on the property, payable to the vendees of the property. To this he replied that he would not accept the same if the policies were payable to the said vendees of the property, that the property belonged to the estate of the bankrupt of which he was trustee, and that the policies must be made payable to him as such trustee. The bill contained an averment that he thereby meant and intended that his interest as trustee in the premises should be insured, and that the respondent company had fair and ample notice of such intention. No averment was made that he requested any such policies to be issued to him. Immediately the company wrote in the policies "payable in case of loss to Joseph F. Dean, trustee," and forwarded the same to the complainant. *Held:* no mistake was made by either party such as would warrant a court of equity in reforming the policy. The mistake was one subsequently made by the complainant in taking a conveyance from the parties in whose name the policy was issued, without first securing the assent of the insurance company.

This was a bill in equity brought to reform a policy of insurance on certain real estate. It was brought by Joseph F. Dean, a citizen of Massachusetts, trustee in bankruptcy of the estate of G. Campbell, against the Equitable Fire Insurance Company of Nashville, Tenn. The bill averred that Campbell was duly adjudged bankrupt, that the complainant was appointed trustee, that the bankrupt made a fraudulent transfer of the property, without consideration, in March, before he went into bankruptcy in May, later in the same year. The following allegations were then made: "That shortly after your orator's said appointment, John R. Dorrance, of Providence, R. I., acting for and in behalf of said respondent company and other companies hereinafter named, informed your orator that he held certain policies of insurance on said premises, payable to said Haskell & Jellerson, which he was ready to deliver to your orator upon payment of the premiums; that your orator thereupon replied that if said policies

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission. 8 Ins. Law J. 773, contains only a condensed report.]

were payable to Haskell & Jellerson he would not accept the same; that said property belonged to the estate of George Campbell, in bankruptcy, and that he was trustee in bankruptcy thereof; and that said policies must be payable to him; and your orator thereby meant and intended that his interest as such trustee in said premises should be insured; and your orator avers that said respondent company had fair and ample notice of such intention, and that your orator desired to have his interest in said property insured by good, effectual, and valid policies; that thereupon said respondent wrote or caused to be written its policy, insuring Haskell & Jellerson against loss by fire on said premises to the amount of $2,500, payable, in case of loss, to Joseph F. Dean, trustee, and forwarded the same to your orator; and your orator, believing, and having good reason to believe, that said policy insured your orator's interest in said premises, accepted the same. That your orator further shows your honors that it was the intention of your orator and said respondent, in and by said policy, to insure said property and your orator's interest therein, and the failure to correctly word the same, if it be incorrectly worded, arose without fault of your orator and from accident and mistake." The loss of the buildings by fire was also set out in the bill, and it was averred that the vendees of the bankrupt released all their interest in the property to the trustee complainant. The respondents demurred to the bill.

J R. Bullard, for complainant.

First. The jurisdiction of this court to reform policies of insurance, when such reform is necessary and proper, is well established, and has been frequently exercised. Harris v. Columbiana Mut. Ins. Co., 18 Ohio, 116; Fireman's Ins. Co. v. Powell, 13 B. Mon. 311; National Fire Ins. Co. v. Crane, 16 Md. 260.

Second. The bill shows a proper case for the interference of the court, a case complete in all essential details, viz.: The mistake, to wit, that the policy on its face insures Haskell & Jellerson, "payable in case of loss to Joseph F. Dean, Trustee," instead of insuring "Dean, Trustee." The correction sought, to wit, the substitution of the words "Joseph F. Dean, Trustee," for the words "Haskell & Jellerson," or generally by making the policy cover Dean's interest as trustee in the premises. The fact is that the mistake was mutual and common to both parties. It sufficiently and clearly appears from the tenor of the whole bill that both parties have done what neither intended, and that there was a distinct agreement to do something different. For example, see end of second page of bill: "That your orator further shows your honors that it was the intention of your orator and said respondent in and by said policy to insure said property, and your orator's interest therein, and the failure . . . arose from mistake." These elements are all the distinctive

requisites of a bill to reform. Hearne v. Marine Ins. Co., 20 Wall. [61 U. S.] 491. The bill is not only to reform, but is also for general relief, and, besides, contains a distinct and separate prayer that the court will interfere to prevent the gross injustice sought to be worked by the unfair and exceedingly technical position of the respondent, and that a decree may be entered ordering payment of the policy in accordance with equity and good conscience. The cause appeals strongly to the favorable consideration of the court. The complainant has acted in perfect good faith, in a trust capacity, with only a nominal personal interest. The creditors have intrusted their rights to him, and they alone are to be affected by the results. The respondent company, with a full knowledge of all the facts, has received a premium, insured the property, and agreed to pay some one the loss; the property is destroyed, and the respondent, feeling sure of and threatening a defence, which, narrow and technical as it is, would avail at law, now endeavors, by demurrer, to prevent the court from reaching the merits in equity. The company knew that "said property belonged to the estate of George Campbell in bankruptcy, and that he (the complainant) was trustee in bankruptcy thereof," and it therefore knew that Haskell & Jellerson had no insurable interest in the property. The complainant did inform the company that the estate belonged to him as trustee. He therefore did inform it that he had the insurable interest in it, and wished to have that interest covered, and the policy should have been drawn to insure the complainant's interest. A new policy was written, and it appears in the bill. The allegation of the bill that the company knew that Haskell & Jellerson had no insurable interest, and the allegation, "your orator further shows your honors that it was the intention of your orator and said respondent, in and by said policy, to insure said property and your orator's interest therein, and the failure to correctly word the same . . . arose . . . from accident and mistake," are conclusive allegations of the fact that there was a mutual mistake, and that both parties did what neither intended.

F. D. Hyde and Henry D. Allen, for respondents.

The principles upon which a policy will be reformed are fully stated in Hearne v. Insurance Co., 20 Wall. [61 U. S.] 490. Now applying the rule of law, in what did the mistake of the insurance company consist? They were directed to make the policies payable to the complainant. They did so. That certainly was not a mistake. The complainant says he informed the agent of the defendant that the property insured belonged to the estate of which he was trustee, but he did not inform them that he had obtained either title or possession, which in fact he had not. What correction should be made? In other

words, how should the policy have been written, following the instruction of the complainant's letter? He does not claim to have had either title or possession. The policy was made payable to him as directed. There was no direction to insure his interest as trustee, or to leave Haskell & Jellerson out of the policy, but to make the policies payable to him. The minds of the parties never met as to any contract, except the one expressed in the policy. There can be no doubt how the company understood the order, which was a reasonable and fair understanding of it, and they had no motive to deliver a policy to the plaintiff other than as directed by him. The policy was accepted as drawn and no objection made, and it is not claimed that the plaintiff could not recover had the loss followed the delivery of the policy, and before Haskell & Jellerson conveyed the property to the plaintiff. The only mistake made by anybody in the premises was that of the plaintiff in taking a conveyance of the property from Haskell & Jellerson, and not notifying the defendant company and securing their assent. Had he done that, all would have been satisfactory. It was not a mistake of the company in writing the policy, but of the plaintiff in allowing the title of the property to change without notice to the company. The policy provides that "if the property be sold or transferred, or upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust, or if the property insured be assigned under any bankrupt or insolvent law, or any change take place in title or possession (except in case of succession by reason of the death of the assured), whether by legal process, or judicial decree, or voluntary transfer or conveyance, . . . then, and in every such case, this policy shall be void." The following cases, out of a great number that can be cited, state the law fully as to the relation of the parties under the policy, and when a court will and will not reform a contract: Fogg v. Middlesex Ins. Co., 10 Cush. 337; Carpenter v. Providence Wash. Ins. Co., 16 Pet. [41 U. S.] 495; Wilson v. Hill, 3 Metc. [Mass.] 66; Hidden v. Slater M. F. Ins. Co. [Case No. 6,463]; Carroll v. Boston Ins. Co., 8 Mass. 515; Young v. Eagle Fire Ins. Co., 14 Gray, 150; Adams v. Rockingham M. F. Ins. Co., 29 Me. 292; 1 Story, Eq. Jur. §§ 152–157; Adams, Eq. 171; Andrews v. Essex Ins. Co. [Case No. 374]; Sawyer v. Hovey, 3 Allen, 331; Lyman v. United Ins. Co., 17 Johns. 373; Wemple v. Stewart, 22 Barb. 154; Kent v. Manchester, 29 Barb. 595; Dickinson v. Glenney, 27 Conn. 104; Hibbert v. Rolliston, 3 Brown, Ch. 571; Bryce v. Lorrilard Fire Ins. Co., 55 N. Y. 245; Young v. McGown, 62 Me. 56; Diman v. Providence, W. & B. R. Co., 5 R. I. 130; Hoover v. Reilly [Case No. 6,677]; Vallette v. Valley Canal Co. [Id. 16,820].

CLIFFORD, Circuit Justice. Courts of equity undoubtedly possess the power to correct mistakes in policies of insurance, even to the extent of changing the material clauses of the instrument which are the subjects of special agreement. But the settled practice is that the power should be exercised with great caution, and only in cases where the proof is entirely satisfactory. Oliver v. Mutual Commercial Marine Ins. Co. [Case No. 10,498]. Instruments of this kind may be reformed in equity, where it appears that by fraud or mistake they do not fulfil, or that they violate the agreement between the parties; but the party alleging the mistake must show exactly in what the mistake consists, and the correction that should be made. Hearne v. New England, etc., Ins. Co., 20 Wall. [61 U. S.] 490; Hunt v. Rousmaniere, 1 Pet. [26 U. S.] 12.

The jurisdiction of chancery courts in that regard is everywhere admitted; but the question is, whether the bill of complaint shows a proper case for equitable interference. Matters well pleaded are admitted by the demurrer, but the corporation respondents deny that the complainant has stated such a case as entitles him to the relief prayed for in the bill of complaint. Sufficient appears to show that the title in the premises insured was in the bankrupt; that he, on the 18th of March, 1876, for some unexplained cause, conveyed the same to John H. Haskell and George S. Jellerson, of New York city, and the complainant alleges that the conveyance was without consideration, and in fraud of the bankrupt act [of 1867 (14 Stat. 534)].

Though executed in fraud of the bankrupt law, the clear inference from the allegations of the bill is that the deed was in due form; and it appears that the grantees, on the 3d of June, 1876, insured the premises in their own name in the company of the corporation respondents, in the sum of $2,500, against loss by fire for the term of one year from the date of the policy. Prior to that, to wit, on the 8th of May, in the same year, the grantor in the conveyance was adjudged bankrupt, and on the 31st of the same month the complainant was duly chosen and confirmed as trustee of the estate of the bankrupt, and on the 3d of June following became seized of the bankrupt's estate by due conveyance, as required by law.

Shortly after the appointment of the complainant, information was communicated to him by an agent of the respondents, that he, the agent, held certain policies of insurance on the said premises, payable to Haskell & Jellerson, which he was ready to deliver to the complainant upon payment of the premiums; to which he replied, that if the policies were payable to those parties he would not accept the same, that the property belonged to the estate of the bankrupt, of which he was the trustee, and that the policies must be payable to him, as such trustee. Appended to that allegation is the averment of the complainant that he thereby meant and intended that his interest, as such trustee, in

the premises should be insured, and that the respondent company had fair and ample notice of such intention that he desired to have his interest in the property insured by good, effectual policies; but he does not allege that he requested that any such policies should be issued to him, or that any other alteration should be made in the policy issued to the grantees of the bankrupt, than what was subsequently made by the company before the policy was delivered to him as such trustee.

They immediately wrote in the policy, or caused to be written, as follows: "Payable in case of loss to Joseph F. Dean, trustee," and forwarded the policy to the complainant; and he alleges that "believing, and having good cause to believe, that said policy insured his interest in said premises, he accepted the same;" that what the complainant wanted was, that in case of loss the insurance should be payable to him, as the trustee of the bankrupt's estate, and that was fully accomplished by the amendment inserted in the policy. Neither party made any mistake in that transaction, and the only mistake subsequently made was that made by the complainant in taking a conveyance from the parties in whose names the policy was issued, without securing the assent of the insurance company. Had he done that, no controversy would ever have arisen.

Plainly it was not a mistake of the company in writing the policy, but of the complainant in allowing the title of the property to be changed without complying with the following condition of the policy: "If the property be sold or transferred, or upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust, or if the property insured be assigned under any bankrupt or insolvent law, or any change take place in title or possession, except in case of succession by reason of the death of the assured, whether by legal process, judicial decree, or voluntary transfer or conveyance . . . then and in every such case the policy shall be void." Conditions of the kind are frequently inserted in policies, and though they often operate with great severity, still they are obligatory in case they are not waived by the company.

It is said that the conveyance was without consideration, but that cannot make any difference, as the formal title was changed before any loss occurred. Written agreements, whether executory or executed, may be reformed in equity courts where there is a material mistake of fact. In all such cases, says Story, if the mistake is clearly made out, by proofs entirely satisfactory, equity will reform the contract so as to make it conformable to the precise intent of the parties. But if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief upon the ground that the written paper ought to be treated as a full and correct expression of the intent of the contracting parties, until the contrary is established beyond reasonable controversy. 1 Story, Eq. Jur. § 152; Adams, Eq. (3d Am. Ed.) 171; Andrews v. Essex Fire & Marine Ins. Co. [Case No. 374]. Apply those rules to this case and it is clear that the complainant is not entitled to any relief.

Demurrer sustained and bill of complaint dismissed.